## CASE NO. 21-4324

# IN THE
# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

TIBA SAKURI CONLEY,

*Defendant - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT GREENBELT

## OPENING BRIEF OF APPELLANT

Alfred Guillaume, III
LAW OFFICES OF ALFRED
GUILLAUME III
Suite 308
1350 Connecticut Avenue NW
Washington, DC 20036
202-321-0549
ag3law@gmail.com

*Counsel for Defendant - Appellant*

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES .................................................................... iii

JURISDICTIONAL STATEMENT .......................................................... 1

ISSUES PRESENTED FOR REVIEW .................................................... 2

STATEMENT OF THE CASE .................................................................. 3

    I.    Relevant Procedural Facts .......................................................... 3

    II.   Relevant Substantive Facts ........................................................ 4

SUMMARY OF THE ARGUMENT ........................................................ 8

ARGUMENT ........................................................................................... 10

    I.    The affidavit to the search warrant does not establish sufficient probable cause to search Mr. Conley's home for narcotics and the good faith exception to the warrant requirement is not applicable ......... 10

        A. Standard of Review .............................................................. 10

        B. The warrant affidavit does not provide a sufficient nexus between Mr. Conley's alleged criminal conduct and his home .......... 10

        C. The good faith exception to the warrant requirement does not apply because no objectively reasonable police officer could believe the warrant established probable cause to search Mr. Conley's home .................................................................. 12

    II.   The district court abused its discretion when it disallowed the testimony of a defense witness whose name was not listed in voir dire ................................................................................................ 13

        A. Standard of Review .............................................................. 13

i

B. The government would not have been prejudiced by the testimony of the defense witness ........................................................ 13

C. The jury's verdict on the 924(c) count may have been different if the witness' testimony was allowed ................................................ 15

III. Mr. Conley's constitutional right to testify on his own behalf was violated ............................................................................................. 16

A. Standard of Review ............................................................................ 16

B. The trial court had a duty to determine whether Mr. Conley knowingly, and intelligently waived his right to testify ..................... 17

C. Mr. Conley's trial counsel was ineffective for not making a motion to reopen the case ................................................................ 19

CONCLUSION ................................................................................................. 20

REQUEST FOR ORAL ARGUMENT ................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Bristol Steel & Iron Works v. Bethlehem Steel Corp.*,
  41 F.3d 182 (4th Cir. 1994) ........................................................ 13, 14

*Fields v. Atty. Gen. of Md.*,
  956 F.2d 1290 (4th Cir. 1992) ......................................................... 19

*Gilliam v. Sealey*,
  932 F.3d 216 (4th Cir. 2019) ........................................................... 16

*Spray-Rite Service Corp. v. Monsanto Co.*,
  684 F.2d 1226 (7th Cir. 1982) ......................................................... 14

*Strickland v. Washington*,
  466 U.S. 668 (1984) ........................................................................ 19

*United States v. Anderson*,
  851 F.2d 727 (4th Cir. 1988) ........................................................... 10

*United States v. Blakeney*,
  949 F.3d 851 (4th Cir. 2020) ........................................................... 10

*United States v. Jones*,
  942 F.3d 634 (4th Cir. 2019) ........................................................... 11

*United States v. Lalor*,
  996 F.2d 1578 (4th Cir. 1993) ............................................. 11, 12, 13

*United States v. Leon*,
  468 U.S. 897 (1984) ........................................................................ 12

*United States v. Martinez*,
  136 F.3d 972 (4th Cir. 1998) ........................................................... 19

*United States v. McMeans*,
  927 F.2d 162 (4th Cir. 1991) ........................................................... 18

*United States v. Muslim*,
  944 F.3d 154 (4th Cir. 2019) .................................................... 16, 18

## Statutes

18 U.S.C. § 922 ................................................................................ 1, 3

18 U.S.C. § 924 ............................................................... 9, 14, 15, 21

18 U.S.C. § 942 ............................................................................ 1, 3

18 U.S.C. § 3231 ............................................................................... 1

18 U.S.C. § 3742 ............................................................................... 1

21 U.S.C. § 841 ............................................................................ 1, 3

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 2255 ............................................................................. 19

## Rules

Fed. R. Crim. P. 21 ........................................................................... 8

## JURISDICTIONAL STATEMENT

On August 10, 2016, a federal grand jury in the District of Maryland returned a three-count indictment against Tiba Conley, charging him with Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §841(a)(1), Possession of Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C.  §942(c)(1)(A)(i), and Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §922(g)(1).  The United States District Court for the District of Maryland was a court of original subject matter jurisdiction pursuant to 18 U.S.C. §3231.  The United States Court of Appeals for the Fourth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742

1

## ISSUES PRESENTED FOR REVIEW

I.    Mr. Conley allegedly sold drugs to a confidential source in February and
April of 2016.  Neither of the alleged drug sales occurred in or around his
home. In April 2016 a magistrate judge signed a warrant authorizing a
search of his home.  Did the search warrant provide sufficient facts to
establish probable cause that his home was used to store drugs?

II.    The defense requested permission to call a witness during trial whose
name was not provided in voir dire.  The witness would have testified
that Mr. Conley possessed firearms in his home because of an impending
threat on his life.  Did the district court abuse its discretion by not
allowing the defense witness to testify?

III.    The judge denied Mr. Conley's request to testify after he had already
begun to give preliminary instructions to the jury. Was Mr. Conley
denied his constitutional right to testify?

## STATEMENT OF THE CASE

I.     Relevant Procedural Facts

On August 10, 2016, a federal grand jury in the district of Maryland returned a three-count indictment against Tiba Conley, charging him with Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §841(a)(1), Possession of Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. §942(c)(1)(A)(i), and Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §922(g)(1).  J.A. Vol. I at 4. On November 6, 2019, a federal grand jury returned a superseding three-count indictment against Mr. Conley, charging him with the identical three counts of the original indictment, but changing the language of the Felon in Possession of Firearms and Ammunition Count to include the words "*knowing* he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year…" J.A. Vol. I at 139-143.

On February 2, 2017, counsel for Mr. Conley filed a Motion to Suppress Evidence Seized from a Search Warrant.  J.A. Vol. I at 6.  On April 21, 2017, counsel for Mr. Conley filed a Motion to Suppress/Request for Franks Hearing, and a Motion to Disclose the Identity of a Confidential Informant.  *Id*. Defense counsel filed supplemental motions on behalf of Mr. Conley on December 14 and 18, 2017.  J.A. Vol. I at 7.  The district court convened a motion hearing on the

3

pretrial motions on January 18, 2018.  J.A. Vol. I at 8.  That same day, all pretrial

motions were denied at the conclusion of the contested hearing. J.A. Vol. I at 8.

On December 17, 2019, Judge Messitte convened a second motions hearing

to allow Mr. Conley to challenge the court's prior denial of the pretrial motions.

J.A. Vol. I at 15.  The court declined to reverse its prior ruling at the conclusion of

the hearing.  On September 21, 2020, prior to jury selection, the court again

addressed its decision to deny the motions arguments on the motions previously

raised by Mr. Conley and explained that the trial would not be postponed for Mr.

Conley to obtain new counsel.  J.A. Vol. I at 205-262.

On September 22, 2020, both parties delivered opening statements to the

jury.  J.A. Vol. I at 19.  On September 24, 2020, the jury returned guilty verdicts as

to all three counts of the indictment. J.A. Vol. I at 19.   On June 15, 2021, Judge

Messitte sentenced Mr. Conley to a term of imprisonment of 157 months.  J.A.

Vol. I at 21.

II.    Relevant Substantive Facts

Police Officer Michael Nolan of the Howard County Police Department

testified that he was a member of a tactical police team in April 2016 that executed

a search warrant on an apartment located at 3016 Oak Hill Court in Ellicott City,

Maryland.  J.A. Vol. I at 291.  Mr. Conley was observed by law enforcement

entering the apartment approximately ten to fifteen minutes prior to the execution

of the warrant.  J.A. Vol. I at 292.  Officer Nolan witnessed Mr. Conley laying on the apartment floor with his hands raised. J.A. Vol. I at 292.   A black handgun was in the kitchen area to the right of the stove.  J.A. Vol. I at 293.  Mr. Conley, the only occupant of the apartment, was handcuffed and taken into custody by other police officers that had entered the apartment.  J.A. Vol. I at 294.

Sergeant James Capone of the Howard County Police Department took custody of Mr. Conley from the tactical team after he entered the apartment.  J.A. Vol. I at 310.  Sergeant Capone then recovered four hundred ninety-five dollars from Mr. Conley's pants pocket.  J.A. Vol. I at 310.

Police Officer Christopher Starvou searched Mr. Conley and recovered a white plastic bag of suspected cocaine from his sock.  J.A. Vol. I at 326-327. Officer Starvou next cleared the ammunition from the handgun which was located on the kitchen counter.  J.A. Vol. I at 330.

Detective Raymond Peele participated in the search the bedroom of the Oak Hill apartment.  J.A. Vol. I at 338.  Detective Peele seized two firearms that were in the bedroom, along with ammunition and gun magazines.  J.A. Vol. I at 343-344.  Detective Peele recovered Inositol powder and nine-thousand dollars inside of a shoebox in the bedroom.  J.A. Vol. I at 351, 361.

Detective Corporal Sharri Jastrzebski testified that she was responsible for documenting all the evidence that was recovered from the Oak Hill apartment.

5

J.A. Vol. I at 369. She testified that digital scales (with suspected drug residue), chemical cutting agents, suspected narcotics (both cocaine and marijuana), and paperwork identifying Mr. Conley as the occupant of the apartment were recovered. J.A. Vol. I at 370-384. She packaged most of the items in an envelope or plastic baggie and placed sealing tape with her initials. J.A. Vol. I at 387.

Jamie Smith, a firearms examiner with the Prince George's County Police Department, testified that the four guns that were recovered from the Oak Hill apartment were operable. J.A. Vol. I at 397.

Matthew Leonard, an agent from the bureau of Alcohol, Tobacco and Firearms testified that each of the four guns recovered from the Oak Hill apartment were manufactured outside the State of Maryland. J.A. Vo1. I at 403-415.

On September 23, 2020, out of the presence of the jury, Mr. Conley requested that his mother be allowed to be called as a witness, although her name was not included in voir-dire. J.A. Vol. II at 438-439. The court denied the request, noting that if she were called as a witness to testify about the reason Mr. Conley allegedly possessed firearms, the door would be open to extensive cross-examination and considerably expand the trial. J.A. Vol. II at 441-443.

Andrew Grill, a crime scene technician, testified that he processed firearms, magazines, and ammunition recovered from Mr. Conley's apartment for DNA and

latent print examination. J.A. Vol. II at 449. Brandon McCollum, a forensic examiner with the Federal Bureau of Investigation, confirmed that Mr. Conley's DNA was present on the firearms and other items received from the apartment. J.A. Vol. II at 521- 523.

Joshua Rothman, a special agent with the Federal Bureau of Investigation, participated in the search of Mr. Conley's apartment. J.A. Vol. II at 464. Special Agent Rothman gave his opinion that certain items in the apartment, such as baking soda and digital scales were indicative of drug use. J.A. Vol. II at 467. Special Agent Rothman collected Mr. Conley's DNA for later processing by the FBI. J.A. Vol. II at 481. Special Agent Rothman testified that law enforcement confirmed that Mr. Conley was the sole leaseholder of the apartment prior to the execution of the search warrant. J.A. Vol. II at 482-483.

Detective Fernando Jaramillo was qualified as an expert witness in drug trafficking, including the distribution of cocaine and cocaine base. J.A. Vol. II at 558. Detective Jaramillo offered his opinion about the items of evidence that were recovered from Mr. Conley's apartment during the search.[1] J.A. Vol. II at 566-573.

---

[1] Detective Jaramillo did not testify that he was involved in the investigation or search of Mr. Conley's apartment.

On September 24, 2020, the fourth and final day of trial, Mr. Conley informed the Court that he intended to testify in his own defense.[2]  J.A. Vol. II at 599.  The trial judge reminded Mr. Conley that he would be prohibited from testifying about the probable cause for the warrant, and other non-relevant topics.  J.A. Vol. II at 600.  Mr. Conley became very upset and asked the trial judge to recuse himself pursuant to Rule 21 because of his perceived bias.  J.A Vol. II at 605-606.  Mr. Conley was taken out of the courtroom due to his behavior and the judge ordered that a closed-circuit video from the lockup be installed so he could view the court proceedings.  J.A. Vol. II at 608.  After the judge begun giving preliminary instructions to the jury, he was notified by Mr. Conley's attorney that his client still wished to testify.   J.A. Vol. II at 618.  The trial judge denied Mr. Conley's request to testify.  J.A. Vol. II at 619.

At the conclusion of closing arguments, the jury found Mr. Conley guilty of all three counts of the indictment.  J.A. Vol. II at 728-732.

## SUMMARY OF THE ARGUMENT

The warrant affidavit does not establish the requisite probable cause to search Mr. Conley's home.  The alleged drug sales by Mr. Conley to an undercover informant do not take place in or around his home.  The affidavit did not provide the magistrate judge sufficient facts to establish a nexus between Mr. Conley's

---

[2] The jury was not present during the exchange between Mr. Conley and the Court.

alleged drug sales and his home.  The good faith exception to the warrant requirement does not apply because the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.  The district court erred when it denied the defense motion to suppress.

The district court abused its discretion by not allowing Mr. Conley's mother to testify about the reason she believed Mr. Conley stored firearms in his home. The government would have had the opportunity to cross-examine the witness, thus, suffering no prejudice.  Mr. Conley was entitled to present a witness with personal knowledge to explain to the jury the reason he possessed firearms in his home, namely, to rebut an element of proof required by the government.  Mr. Conley's rights were substantially affected because the testimony from the witness could have influenced the jury to find him not guilty of the 924(c) count.

Mr. Conley's constitutional right to testify on his own behalf at trial was violated.  Mr. Conley notified his attorney that he still wished to testify after he was removed from the courtroom.  Mr. Conley presumably would have adhered to the limitations placed on his testimony by the trial judge.  Mr. Conley's constitutional right to testify in his own defense should have outweighed any concerns the trial judge had about interrupting the flow of the trial, and his defense attorney was ineffective for failing to make a motion to reopen the case.

# ARGUMENT

I.    The affidavit to the search warrant does not establish sufficient probable cause to search Mr. Conley's home for narcotics and the good faith exception to the warrant requirement is not applicable.

A. Standard of Review

"We review de novo the legal determinations that underpin a district court's suppression rulings." *United States v. Blakeney*, 949 F.3d 851 (4th Cir. 2020)

B. The warrant affidavit does not provide a sufficient nexus between Mr. Conley's alleged criminal conduct and his home.

The affidavit section of the search and seizure warrant application provides the details of two controlled drug purchases that Mr. Conley participated in with undercover informants in February and April of 2016. J.A. Vol. I at 138.6-138.7. Both controlled purchases occurred in Prince George's County Maryland. J.A. Vol. I at 138.6-138.7. During their investigation police officers determined that Mr. Conley residence was in Howard County, Maryland. J.A. Vol. I at 138.6-138.7. During the controlled buy in April 2016, police surveillance established that Mr. Conley left his home in Howard County, traveled to Prince George's County, stopped at two locations in Prince George's County prior to meeting the confidential informant. J.A. Vol. I at 138.6-138.7.

It is well established that there must be a sufficient nexus between criminal conduct, the items to be seized, and the place to be searched. *See United States v. Anderson*, 851 F.2d 727 (4th Cir. 1988). This Court has held that whether there is a

10

sufficient nexus established between the criminal conduct and a person's residence is determined on a case-by-case basis. See *United States v. Jones*, 942 F.3d 634 (4th Cir. 2019).[3]

In *United States v. Lalor*, 996 F.2d 1578 (4th Cir. 1993), two confidential sources informed the police that the defendant sold drugs in Baltimore at certain locations in the city. The sources provided the police information about the defendant's car and residence, which police were able to independently corroborate belonged to the defendant. *Id*. at 1580. This Court found the affidavit to the search warrant invalid because there was no basis to infer that drug activity would be found at the defendant's residence. *Id*. at 1582. This Court also noted that the affidavit did not "explain the geographic relationship between the area where the drug sales occurred…" [and] the defendant's residence. *Id*.

In the instant case, neither of the confidential informants provided the police with any information about where Mr. Conley lived, or whether he was known to sell any drugs from his home. The police learned where Mr. Conley lived by electronically tracking his phone, which in turn allowed them to physically surveil him at his residence. J.A. Vol. I at 138.6. The controlled buys in this case occurred in Prince George's County, Maryland, not in Howard County where he

---

[3] Sufficient nexus between crime and ammunition seized from the residence where defendant posted multiple threats against named law enforcement officers and warned that "pigs should not come to my house at all."

11

resided. *Id*.   In *Lalor*, the defendant lived and sold drugs in the same city, but the affidavit was "devoid of any basis from which the magistrate could infer that evidence of drug activity would be found at 1572 Waverly Way."  996 F.2d at 1582.  Similarly, the Court should reach an identical conclusion in this case, namely that an insufficient nexus exists between Mr. Conley's home and any alleged criminal activity, particularly the sale or possession of illegal drugs.

    C.  The good faith exception to the warrant requirement does not apply because no objectively reasonable police officer could believe the warrant established probable cause to search Mr. Conley's home.

In *Lalor*, this Court found that the good faith exception to the warrant requirement, established by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), applied because "the warrant is not so lacking in probable cause that the officers' reliance upon it was objectively unreasonable."  996 F.2d at 1583. Here, there is nothing to infer that Mr. Conley stores drugs in his residence, other than the fact that he lives at the address.  According to the affidavit, the police maintained both physical and electronic surveillance on Mr. Conley, and there is no mention that any suspected drug activity occurred in and around his home during their surveillance or at any other time.  Moreover, there is no information provided in the affidavit that Mr. Conley did business anywhere in Howard County, much less in and around his residence.

12

In *Lalor*, confidential source(s) informed the police about the defendant's alias, address, and the area in which he operated. 996 F.2d at 1581. Here, neither confidential source provides any information about Mr. Conley's home in Howard County. The information that the informants provide relative to where Mr. Conley is alleged to do business suggest that he is part of a criminal operation that operates in Washington D.C. and Prince George's County, Maryland. Specifically, the affidavit states that Mr. Conley "is responsible for supplying crack cocaine in Washington D.C. and Prince George's County, Maryland." J.A. Vol. I at 138.6. There are no objective facts from which a reasonable officer could infer that Mr. Conley's home was linked to drug activity.

II.     The district court abused its discretion when it disallowed the testimony of a defense witness whose name was not listed in voir dire.

A. Standard of Review

"The district court has broad discretion concerning the admissibility of testimony, and thus we review its ruling to permit or refuse a witness from testifying for an abuse of discretion*." Bristol Steel & Iron Works v. Bethlehem Steel Corp*., 41 F.3d 182 (4th Cir. 1994).

B. The government would not have been prejudiced by the testimony of the defense witness.

In this case, the defense requested to call a witness, Mr. Conley's mother, who would have testified that she was informed by a member of law enforcement that her son's life was in imminent danger; information which she in turn relayed to her son. J.A. Vol. II at 439. The defense wanted to use her testimony to rebut

the government's argument that Mr. Conley stored firearms in his residence in

connection with his operation as a drug trafficker, and not for some other

legitimate reason.  J.A. Vol. II at 439.  The government argued that her testimony

would be irrelevant and prejudicial to the government's case, because the 924(c)

count does not require a "one type of knowledge requirement."  J.A. Vol. II at 440.

The trial judge agreed that any threat communicated to Mr. Conley was relevant

but declined to allow her testimony because "you open the door to some very

serious cross-examination of your client, and that is part of and independent of the

fact that it expands the trial considerably, and I am just not prepared to do that at

this point."  J.A. Vol. II at 442.

In *Bristol Steel & Iron Works v. Bethlehem Steel Corp*., 41 F.3d 182 (4th Cir.

1994) this Court adopted the test first used by the Seventh Circuit in *Spray-Rite

Service Corp. v. Monsanto Co.,* 684 F.2d 1226 (7th Cir. 1982), to determine

whether to allow a witness' testimony whose name was not included in a pretrial

witness list.  The factors of the test are as follows:

> "(1) the prejudice of surprise in fact of the party against whom the
> excluded witnesses would have testified; (2) the ability of that party to
> cure the prejudice; (3) the extent to which waiver of the rule against
> calling unlisted witnesses would disrupt the orderly and efficient trial
> of the case or of other cases in the court; (4) bad faith or willfulness to
> comply with the court's order." *Id*. at 187.

If Mr. Conley's mother had been allowed to testify the prejudice suffered by

the government would have been minimal at best.  Her testimony presumably

would have been narrowly tailored to offer an alternative explanation, i.e., the

credible threat on his life relayed to her by law enforcement, as the reason for

possessing guns in his home.  The prosecutor would have had the opportunity to

cross examine her with respect to her credibility or potential bias, as well as ask

her questions about other reasons that Mr. Conley had for possessing a firearm in

his home.  Moreover, the trial judge conceded that Mr. Conley's mother testimony

was relevant.  The relevance and importance of her proffered testimony should

have outweighed any concern about extending the length of the trial.

C. The jury's verdict on the 924(c) count may have been different if the
   witness' testimony was allowed.

The trial judge gave the following instruction to the jury with respect to the

burden of proof required to convict Mr. Conley of 18 U.S.C 924(c):

> "The government is required, however, to prove beyond a reasonable
> doubt that a firearm was in the defendant's possession or under the
> defendant's control at the time that the drug trafficking crime was
> committed, and that the possession of the gun was not merely
> coincidental to a drug trafficking crime."  J.A. Vol. II at 654.

If Mr. Conley's mother had been allowed to testify, the jury would have

received evidence that a law enforcement officer informed her of a credible threat

against her son's life, which she in turn relayed to him.  Had the jury received

evidence of the threat on Mr. Conley's life, contrasted with the government's

evidence that the firearms were part and parcel of the drug trade, they would have

been able to make a more informed decision.  In other words, the jury should have

been able to consider the possibility that the firearms in the home were there for self-defense against an imminent threat to his life as opposed to being tools of the drug trade. The testimony of Mr. Conley's mother would have bolstered the defense argument that Mr. Conley only possessed the guns because of the threat to his life.

> In *Gilliam v. Sealey*, 932 F.3d 216, (4th Cir. 2019), this Court noted:
>
> "Evidence is material if there is a reasonable probability that its disclosure would have produced a different result. This standard does not require a showing that a jury more likely than not would have returned a different verdict. Rather the reasonable probability standard is satisfied if the likelihood of a different result is great enough to undermine confidence in the outcome or the suppression cast[s] serious doubt on the proceedings integrity."

Mr. Conley's mother testimony was material to the defense's theory of the case. Her testimony should have been allowed to rebut the government's theory that the firearms in the apartment were there to protect him of an impending threat on Mr. Conley's life. The government would not have been prejudiced by her testimony and could cross-examine her on numerous issues, including her bias, credibility or the alleged severity of the threat to her son's life.

> III.    Mr. Conley's constitutional right to testify on his own behalf was violated.

A. Standard of Review

"Given the constitutional nature of this right, courts generally review de novo whether a defendant's right to testify on his own behalf was violated at trial." *United States v. Muslim*, 944 F.3d 154 (4th Cir. 2019).

16

B. The trial court had a duty to determine whether Mr. Conley knowingly, and intelligently waived his right to testify.

At the close of the government's case, Mr. Conley, through counsel and outside the presence of the jury, notified the court that he wished to testify. J.A. Vol. II at 599. The trial judge advised Mr. Conley of his constitutional rights to testify or remain silent. J.A. Vol. II at 599-600. Additionally, the judge informed Mr. Conley that his testimony could not reference certain events, such as the alleged controlled buys, that established probable cause for the warrant to search his home. J.A. Vol. II at 600-601. Mr. Conley became very upset and a heated argument with the trial judge ensued. J.A. Vol. II at 601-608. The trial judge eventually ordered the Marshals to bring Mr. Conley to the lockup, where he could view the court proceedings from a closed circuit. J.A. Vol. II at 608. The court then took a brief recess and ordered Mr. Conley's attorney to speak with him to determine whether he still intended to testify. J.A. Vol. II at 610. After a brief recess, Mr. Conley's attorney informed the court that his client did not wish to testify. (pg.14).

The jury reentered the courtroom after the judge confirmed that Mr. Conley could see and hear the court proceedings from the lockup. J.A. Vol. II at 615. The trial judge informed the jury that Mr. Conley was viewing the proceedings on a closed circuit. J.A. Vol. II at 615. The trial judge started to read the introductory remarks to the jury instructions when he was informed by Mr. Conley's attorney

17

(at a bench conference) that his client sent a message to the courtroom that he still wished to testify on his own behalf.  J.A. Vol. II at 618.  The trial judge denied Mr. Conley's request to testify, noting his "on again off again behavior which is potentially complicating the trial."  J.A. Vol. II at 619.

In *Muslim*, this Court noted that:

> "[c]ourts, including this one, have held that the trial court does not have a sua sponte duty to conduct a colloquy with the defendant at trial to determine whether the defendant has knowingly and intelligently waived the right to testify.  However, a number of courts have also recognized exceptional, narrowly defined circumstances, virtually all of which involve conflicts between the defendant and counsel, where a court does have such a duty…" 944 F.3d at 163.

In this case, the trial judge's concerns about maintaining the flow of the trial should have been outweighed by Mr. Conley's constitutional right to testify. Moreover, the court had only begun to read the preliminary instructions to the jury when he received notice that Mr. Conley wished to testify.  J.A. Vol. II at 618. This Court has long recognized the right of a criminal defendant to testify on own his behalf.  "It is clear that a defendant in a criminal trial has a Constitutional right to testify on his own behalf.  Further, it is the defendant who retains the ultimate authority to decide whether or not to testify."  *United States v. McMeans*, 927 F.2d 162 (4th Cir. 1991).  Here, the trial judge had a duty to inquire whether Mr. Conley still wanted to testify, and if so, allow him the opportunity.

18

C. Mr. Conley's trial counsel was ineffective for not making a motion to reopen the case.

In *United States v. Martinez*, 136 F.3d 972, (4th Cir. 1998), this Court explained that "[a] defendant can raise the claim of ineffective assistance of counsel in one of three ways: (1) in a motion for a new trial based on anything other than newly discovered evidence; (2) on direct appeal if it conclusively appears from the record that his counsel did not provide effective assistance; or (3) by a collateral challenge pursuant to 28 U.S.C. §2255." In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test to determine whether assistance of counsel has been constitutionally sufficient. The first prong of the *Strickland* test requires the defendant to show that counsel's representation fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-91. The second prong of the Strickland test demands that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. This Court has held that "[t]he defendant bears the burden of proving Strickland prejudice…" *Fields v. Atty. Gen. of Md.,* 956 F.2d 1290, (4th Cir. 1992).

In this case, Mr. Conley's attorney should have insisted that the case be reopened once he became aware that his client still wished to testify. However, instead of making any arguments on behalf of his client to reopen the case after he

notified the court of his client's wish to testify, Mr. Conley's attorney said the

following to the court:

> "What my request would be, having put that on the record, is that we
> go ahead and proceed because I regard myself as having already
> rested, so I am not requesting the Court do that, but I at least wanted
> to communicate the request." J.A. Vol. II at 618.

Although defense counsel notified the judge of his client's renewed desire to

testify on his own behalf, his failure to make any argument insisting that the case

be reopened renders his assistance ineffective. It is entirely possible that the trial

judge would have granted the motion to reopen the case if Mr. Conley's attorney

insisted that Mr. Conley's constitutional right outweighed any potential concerns

the judge had about the flow of the trial. Additionally, Mr. Conley's counsel could

have argued that the jury had not yet been instructed on the substantive law and

only received a few introductory remarks. Thus, no party would have suffered any

prejudice if Mr. Conley had been allowed to testify. Mr. Conley presumably

would have adhered to the trial judge's prior admonition to limit his trial testimony

to relevant topics, after having had a moment to gather himself and reflect on the

events of the day from the courthouse lockup.

## CONCLUSION

The warrant affidavit did not establish a sufficient nexus between Mr.

Conley's residence and any suspected drug activity. Neither of the confidential

informants provided the police any information about where Mr. Conley lived, or

whether they were aware if he used his home for the purpose of selling drugs.  The

two controlled buys between Mr. Conley and the informants occurred months apart

in 2016, both in Prince George's County, Maryland.  The physical surveillance of

Mr. Conley at his residence by the police failed to establish any nexus between Mr.

Conley's home and any suspected drug activity.  The good faith exception to the

warrant requirement does not apply because no objectively reasonable police

officer could believe in the existence of probable cause, where nowhere in the

affidavit is Mr. Conley's home mentioned.  The informants do not know where Mr.

Conley lives, and the police surveillance fails to connect him with any suspected

drug activity.  Therefore, this Court must hold that the affidavit is invalid, and the

good faith exception does not apply.  The fruits of the search seized in Mr.

Conley's apartment must be suppressed.

The district court abused its discretion by not allowing Mr. Conley's mother

an opportunity to testify.  The fact that her name was not given during voir-dire

should not serve as a basis to disqualify her as a potential trial witness.  The

relevance of her testimony should have outweighed any concern the trial judge had

about extending the length of trial.  Most importantly, her testimony could have

influenced the jury to reach a different decision with respect to the 924(c) count,

bolstering the defense's claim that the firearms in the apartment were only there in

response to the impending threat on Mr. Conley's life.  Therefore, Mr. Conley should be granted a new trial.

Mr. Conley's constitutional right to testify on his own behalf was violated. The trial judge had a duty to determine whether Mr. Conley knowingly and intelligently waived his right to testify because of the prior events that unfolded in the court room, including but not limited to the apparent conflict between Mr. Conley and his attorney.  Mr. Conley's constitutional right to testify outweighed any concerns that the trial judge had about maintaining the flow of the trial. Furthermore, Mr. Conley's attorney rendered ineffective assistance of counsel by not making a motion to reopen the case once he received notice that his client still wished to testify.  Therefore, because Mr. Conley's constitutional right to trial was violated, he should be granted a new trial.

## REQUEST FOR ORAL ARGUMENT

The Appellant requests oral argument on the matters presented in this appeal.

*s/ Alfred Guillaume III*
Alfred Guillaume III, Esq.
Law Offices of Alfred Guillaume III, LLC
1350 Connecticut Ave. NW, Suite 380
Washington, D.C. 20036
(202)-321-0549
*For Appellant Tiba Conley*

Dated:  March 4, 2022

22